**2015-1448**

# United States Court of Appeals for the Federal Circuit

SITE UPDATE SOLUTIONS, LLC,

*Plaintiff-Appellee,*

*v.*

CBS CORP., JASONS DELI CORP,
TICKETMASTER ENTERTAINMENT, INC.,
THE WALT DISNEY COMPANY, and TIME WARNER INC.,

*Defendants.*

NEWEGG INC.,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of California in Case No. 5:11-cv-03306-PSG,
Paul S. Grewal, United States Magistrate Judge.

## DEFENDANT-APPELLANT'S NEWEGG INC.'S REPLY BRIEF

YAR R. CHAIKOVSKY
PHILIP OU
PAUL HASTINGS LLP
1117 California Avenue
Palo Alto, California 94034
(650) 328-1800

*Counsel for Defendant-Appellant*

AUGUST 21, 2015

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................1

II.     SITE UPDATE'S RELIANCE ON OTHER CASES INVOLVING
        NEWEGG, SPECIFICALLY THIS COURT'S DECISION IN SFA
        SYSTEMS, IS FLAWED ............................................................6

III.    THE DISTRICT COURT ABUSED ITS DISCRETION WHEN,
        DESPITE ACKNOWLEDGING THE LITANY OF PROBLEMS IN
        SITE UPDATE'S CASE, IT ULTIMATELY FAILED TO
        CONSIDER THESE PROBLEMS IN THE AGGREGATE AND
        CONCLUDE THAT THIS CASE "STANDS OUT" ...................11

IV.     SITE UPDATE'S BELATED ATTEMPTS TO JUSTIFY ITS
        FAILURE TO UNDERSTAND  AND PROPERLY APPLY
        MEANS-PLUS-FUNCTION LAW DO NOT IMPACT THE
        ULTIMATE CONCLUSION THAT THE DISTRICT COURT
        ABUSED ITS DISCRETION IN NOT FINDING THIS CASE
        EXCEPTIONAL........................................................................13

        A.      Site Update's Positions Were Not "Consistent with Federal
                Circuit Precedent" ...............................................................13

        B.      Site Update's Failure to Understand and Apply Means-Plus-
                Function Law Was Not a "Factual Dispute" .....................14

                1.      Site Update's Uninformative and Conclusory Expert
                        Declaration Carries No Weight................................15

                2.      Site Update's Unexplained Patent Citations Further
                        Evidence its Meritless Positions .............................17

        C.      Site Update's Ever-Changing Arguments Evidence its
                Recognition of the Lack of Substantive Strength in its Markman
                Positions ..............................................................................19

        D.      Site Update's Continued Misrepresentations and Manufactured
                Attacks on Newegg's Positions Demonstrate Bad Faith ...................21

V.      "SLOPPINESS" AND "LESS THAN STELLAR LAWYERING"
        ARE NOT EXCUSES TO SITE UPDATE'S PERVASIVE
        MISUNDERSTANDING OF THE LAW.....................................23

# TABLE OF CONTENTS
## (CONTINUED)

**Page**

VI.   SITE UPDATE CANNOT HIDE BEHIND THE PRESUMPTION
      OF VALIDITY BY CLAIMING THAT THIS CASE IS ONLY
      ABOUT INDEFINITENESS ......................................................................26

VII.  CONCLUSION..............................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcatel-Lucent USA, Inc. v. Newegg Inc.*,
  505 Fed. Appx. 957 (Fed. Cir. 2013) ................................................................. 7

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
  521 F.3d 1328 (Fed. Cir. 2008) ........................................................................ 13

*Blackboard, Inc. v. Desire2Learn Inc.*,
  574 F.3d 1371(Fed. Cir. 2009) ........................................................................ 14

*Commil USA, LLC v. Cisco Systems, Inc.*,
  135 S. Ct. 1920 (2015) ...................................................................................... 30

*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011) ........................................................................ 10

*Ergo Licensing v. Carefusion 303*,
  673 F.3d 1361 (Fed. Cir. 2012) ........................................................................ 14

*Finisar Corp. v. DirecTV Grp., Inc.*,
  523 F.3d 1323 (Fed. Cir. 2008) ........................................................................ 14

*Gaymar Industries, Inc. v. Cincinnati Sub-Zero Products, Inc.*,
  790 F.3d 1369 (Fed. Cir. 2015) .................................................................. 24, 25

*Goss Intern. Am., Inc. v. Graphic Mgmt. Assoc., Inc.*,
  739 F. Supp. 2d 1089 (N.D. Ill. 2010) ........................................................ 19, 20

*Highmark Inc. v. Allcare Health Mgmt. Sys.*,
  134 S. Ct. 1744 (2014) ........................................................................................ 5

*Icon Health & Fitness, Inc. v. Octane Fitness LLC*,
  2015 WL 4041684 (D. Minn. July 1, 2015) ..................................................... 12

*In re Katz Interactive Call Processing Patent Litig.*,
  639 F.3d 1303 (Fed. Cir. 2011) ............................................................. 23, 24, 25

## <u>TABLE OF AUTHORITIES</u>
### <u>(CONTINUED)</u>

**Page(s)**

*Kelora Systems LLC v. Newegg Inc.*,
  2012 U.S. Dist. LEXIS 70636 (N.D. Cal. May 21, 2012), aff'd 500
  Fed. Appx. 953 (Fed. Cir. 2013) ........................................................................ 7

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014) .............................................................................. *passim*

*Oplus Technologies, Ltd. v. Vizio, Inc.*,
  782 F.3d 1371 (Fed. Cir. 2015) ......................................................................... 5

*Raylon, LLC v. Complus Data Innovations, Inc.*,
  700 F.3d 1361 (Fed. Cir. 2012) ................................................................... 17, 18

*Soverain Software, LLC v. Newegg Inc.*,
  705 F.3d 1333 (Fed. Cir. 2013) ......................................................................... 7

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
  659 F.3d 1376 (Fed. Cir. 2011) ....................................................................... 14

**Statutes**

35 U.S.C. § 112 ................................................................................................ *passim*

# I.    INTRODUCTION

Site Update fails to refute the record presented by Newegg demonstrating that the district court abused its discretion in denying Newegg's §285 motion under the Supreme Court's "considerably lower" exceptional case standard.  Instead, Site Update offers excuses, new arguments, and continued misrepresentations of its prior positions and the law.  Its brief is further evidence of Site Update's pursuit of this case without regard to the merits and its continued effort to conceal that fact.

The district court abused its discretion by not considering whether, and ultimately finding that, this case is exceptional based upon the aggregation of defects (*i.e.*, lack of substantive strength) in Site Update's assertion of a single means-plus-function claim and the district court's acknowledgement of the same.

Newegg recounted in detail the multitude of Site Update's defects or errors, including the district court's acknowledgement of each.  But the district court never addressed whether the ***aggregate*** of these problems made this case stand out.  Site Update calls Newegg's argument "an inexcusable mis-statement of the District Court's ruling," but its purported support appears to be nothing more than the district court's usage of the phrase "totality of the circumstances" in its opinion three times.  Newegg submits that a reasonable reading of the district court's opinion shows that the court did not address whether each of Site Update's defects were considered in the ***aggregate***.  This alone was an abuse of discretion.

The record on appeal simply cannot be reconciled with a finding that this was a "run of the mill" patent case where Site Update lost a few claim construction arguments.  The typical patent case does not have claim construction positions characterized as "highly problematic" and "stain[ing] credibility".  The typical patent case does not assert a single claim found likely indefinite on four different bases.  Litigants in a typical patent case are not found to "misunderstand" the law necessary to form the gravamen of its complaint, especially where the litigant is the largest patent assertion entity in the United States and represented by experienced patent counsel.  The typical patent case does not see twenty-three defendants forced to defend against a frivolous patent claim for over two years in two venues and through a *Markman,* simply because they refused to give in to Site Update's nuisance value settlement demands.  The typical patent case does not have as many problems associated with the assertion of a single claim as this one does.  This case must stand out from others and be exceptional—any other conclusion renders the Supreme Court's decision in *Octane* meaningless.

Even if the district court did consider all of the defects in the aggregate, the myriad of defects relating to Site Update's meritless pursuit of this case demonstrates that this case "stands out from others."  The district court abused its discretion by not finding that this case stands out based upon the lack of "substantive strength [in Site Update's] litigation position (considering both the

governing law and the facts of the case)" where Site Update ignored its obligation to understand and follow means-plus-function law when it filed its complaint in 2010 (asserting a single claim limited to eight means-plus-function elements) and continued to 'misunderstand' this law through this appeal.

Site Update seeks to defuse its failure to understand and follow the law, but each failed attempt to do so only further evidences appellate counsel's recognition that trial counsel's claim construction arguments (*i.e.,* the focus of the exceptional case inquiry) were unsupportable.  Site Update claims that its positions "were consistent with Federal Circuit precedent"—a false assertion considering the district court's repeated findings that Site Update grossly misunderstood and misstated means-plus-function law.  Next, Site Update devotes twenty-pages to incorrectly asserting that each of its proposed constructions were "reasonable, made in good faith, had support in the specification, and were supported by a well-reasoned declaration by a qualified expert."  But the district court has already rejected Site Update's positions, finding them "highly problematic", "likely [to be found] frivolous", "difficult to make logical sense [of]" and "strain[ing] credibility".  These are not "cherry-pick[ed]" statements from the district court's order (as Site Update suggests), they are unquestionably the court's characterizations of Site Update's positions.

Moreover, Site Update's conclusory statements that each position was "supported in the specification" and "by a well-reasoned declaration by a qualified expert" are exemplary of Site Update's effort to conceal the exceptional nature of this case. On closer examination, all Site Update does is cite to passages from the specification, but without any discussion as to how those passages actually support its positions. Nor does Site Update identify any statements from its expert explaining how its proposed structures are linked to performing the claimed functions. Indeed, despite the misleading headings in its brief, Site Update does not even mention its expert for almost half of the means-plus-function claim terms. Site Update's positions were unsupportable.

Site Update attempts to make its positions appear more reasonable by attacking Newegg's positions, claiming, for instance, that Newegg did not argue indefiniteness in East Texas and that the court did not agree with Newegg's proposed structure for the "means for creating" term. Site Update's assertions further evidence how this case "stands out", especially considering that Site Update made such assertions in prior briefing and Newegg previously responded with citations in the record that refuted these falsehoods. Site Update's "throw everything against the wall and see what sticks" approach does not change the district court's prior characterizations of its positions—it confirms them.

Site Update's remaining arguments in its brief are equally unavailing and further evidence Site Update's recognition that its positions before the district court cannot be justified. For example, Site Update seeks to justify some of its inexplicable positions as "sloppiness" or "less than stellar lawyering." But as the record demonstrates, this is not a case of isolated, one-off misstatements. Site Update failed to follow the law necessary to form the gravamen of its complaint, and continues to do so (while misrepresenting its positions and the law) through this appeal. Site Update also attempts to cast the disputes in this case as solely about indefiniteness in order to hide behind the presumption of validity. But the indefiniteness of the single asserted claim is only one of many defects (as explained above, and herein) that demonstrate that this case stands out from others.

In addressing the Supreme Court's decision in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), this Court explained in *Oplus Technologies, Ltd. v. Vizio, Inc.,* 782 F.3d 1371, 1374 (Fed. Cir. 2015) that "[t]his change in the law **lowers considerably** the standard for awarding fees." (emphasis added). And the Supreme Court in *Highmark* explained that "'[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Highmark Inc. v. Allcare Health Mgmt. Sys.*, 134 S. Ct. 1744, 1748 n.2 (2014) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)). The district court could not

have properly applied the Supreme Court's considerably lower standard to the evidence in this case and fail to find this case exceptional. As Newegg explained in its Appellate Brief, the district court's opinion underscores the importance for this Court to provide guidance on (1) how *Octane* should be properly applied to accomplish the Supreme Court's intent and (2) when district courts have abused their discretion in not following that directive by failing to find that certain patent cases, such as this one, "simply stand out from others". Newegg respectfully submits that, based on the record presented, the district court abused its discretion. This Court should reverse and find this case exceptional.

## II.   SITE UPDATE'S RELIANCE ON OTHER CASES INVOLVING NEWEGG, SPECIFICALLY THIS COURT'S DECISION IN *SFA SYSTEMS*, IS FLAWED

Site Update's attempt to mitigate the unreasonableness of its positions by pointing to other cases where Newegg has sought redress against meritless patent litigation is irrelevant to the issues here. Site Update's assertion that "Newegg's appeal is yet another battle in Newegg's apparent crusade to prevail on a §285 motion against a non-practicing entity" (SUS Br. at 13) is nothing more than hyperbole. Newegg has elected to settle litigation or not seek fees in the vast majority of its patent cases, including those brought by other non-practicing entities, even though Newegg did not believe that it infringed any valid claims. Sometimes Newegg elected not to seek fees even after it prevailed in court. For

example, in a case against patent assertion entity Soverain Software, after Newegg obtained a judgment of invalidity from this Court, Newegg did not seek its fees. *Soverain Software, LLC v. Newegg Inc.*, 705 F.3d 1333, 1336 (Fed. Cir. 2013). Likewise in *Alcatel-Lucent USA, Inc. v. Newegg Inc.*, despite a complete defense verdict, Newegg did not seek fees. 505 Fed. Appx. 957 (Fed. Cir. 2013). In *Kelora Systems LLC v. Newegg Inc.*, Newegg obtained summary judgment of invalidity based on the plaintiff's own on-sale bar (which this Court also summarily affirmed), but Newegg never sought fees. No. 4:11-cv-1548, 2012 U.S. Dist. LEXIS 70636 (N.D. Cal. May 21, 2012), aff'd 500 Fed. Appx. 953 (Fed. Cir. 2013). Newegg has been and will continue to be reasonable and selective in defending cases and seeking fees. Site Update is irresponsibly and grossly wrong.

Site Update's brief then repeatedly cites to this Court's recent decision in *SFA Systems*, which held that the district court did not abuse its discretion in denying Newegg's §285 motion in that case, to suggest that the same result should be found here. *SFA Systems* is distinguishable on multiple fronts, and supports a finding that ***this*** case is exceptional and that the district court abused its discretion in not coming to that conclusion.

First, in evaluating the substantive strength (or lack thereof) of SFA's litigation position in that case, Newegg argued on appeal that the district court erred in its claim constructions (which did not adopt Newegg's proposed

constructions) and in denying Newegg's summary judgment motion on indefiniteness. This Court found that the district court did not abuse its discretion in finding that SFA's litigation position did not stand out, but made clear that its "holding is based on the district court's evaluation of the strength of SFAs' litigation position, ***not on the correctness of the district court's claim construction and indefiniteness orders.***" *Id.* at *4 (emphasis added). "We express no opinions as to whether we ultimately would have affirmed those determinations." *Id.* In sum, the Federal Circuit declined to determine whether the district court was correct in disagreeing with Newegg's claim construction and indefiniteness positions.

The positions in this appeal are reversed. Unlike in *SFA Systems*, here the district court **agreed** with Newegg's proposed constructions and indefiniteness arguments. As such, the district court came to conclusions, for example, that Site Update "misunderstood Federal Circuit law" and set forth claim constructions and arguments that were "highly problematic", "likely [to be found] frivolous", "strain[ing] credibility" and "difficult to make logical sense [of]". The district court further invited summary judgment briefing of indefiniteness on the single asserted claim on four independent bases, but Site Update stripped Newegg's ability to invalidate the claim or obtain summary judgment of non-infringement under the court's claim constructions by forcing dismissal through a covenant not

to sue. Newegg Br. at 14; A1901-6. On appeal, Site Update does not appear to challenge the district court's conclusions, but attempts to convince this Court that its positions were "reasonable"—they were not. *See infra* Section IV. As such, the record underlying the existence of any "substantive strength" in the litigation positions between SFA Systems and Site Update are polar opposites.

Site Update also relies on *SFA Systems* to mitigate Newegg's arguments that Site Update's nuisance-value settlements, and the overall manner in which this case was litigated, is irrelevant to whether this case is exceptional. But *SFA Systems* supports consideration of Site Update's abusive business model in finding *this* case exceptional—the Court simply did not find the facts in their totality from *that* case sufficient. *Id.* at 7 ("We do not hold that the district court cannot consider a patentee's pattern of prior litigation in determining whether a case is exceptional.")

Again, the facts here are distinguishable. In *SFA,* this Court noted that "there were several [settlement] payments that were inconsistent with Newegg's argument that SFA always settled with accused infringers for far less than the cost to prosecute a case to judgment". *Id.* As such, this Court found that the "district court's unwillingness to read bad faith motivations in SFA's settlement amounts, without more evidence about what prompted those settlements, was neither clearly erroneous nor an abuse of discretion." *Id.*

**All** of Site Update's settlements in this case are for nuisance value and far less than the cost of litigation, with the overwhelming majority of them falling between $25,000 and $75,000, the value of settlements seen in *Eon-Net LP v. Flagstar Bancorp,* 653 F.3d 1314 (Fed. Cir. 2011). Newegg Br. at 57-58; A3430-1. Like in *Eon-Net*, Newegg exposed the frivolity of Site Update's meritless positions at its first opportunity to do so—the *Markman*—thereby closing the door on any chance Site Update had on extracting another nuisance value settlement from any of the remaining defendants. That was not the case in *SFA Systems*, as SFA won several claim construction arguments and proceeded to litigate towards trial. Moreover, the district court already found that Site Update's settlement pattern "raises some eyebrows". A3394. No such finding was made in *SFA*.

The district court could not have properly applied the "considerably lower standard" to its prior factual findings—which included recognition of all of Site Update's problems and defects described in Newegg's Appellate Brief and herein—and concluded that this case is not exceptional. This Court's opinion in *SFA Systems* is distinguishable, and underscores that point.

## III. THE DISTRICT COURT ABUSED ITS DISCRETION WHEN, DESPITE ACKNOWLEDGING THE LITANY OF PROBLEMS IN SITE UPDATE'S CASE, IT ULTIMATELY FAILED TO CONSIDER THESE PROBLEMS IN THE AGGREGATE AND CONCLUDE THAT THIS CASE "STANDS OUT"

The entirety of Site Update's brief devoted to rebutting Newegg's argument that the district court did not consider the defects in the ***aggregate*** is a single citation (and its footnote) to a conclusory sentence at the end of the district court's opinion: "[b]ecause the court finds that, *considering the totality of the circumstances*, this case is not 'one stands out from others,' Newegg's motion for declaration of exceptionality and attorney's fees is DENIED." A33; SUS Br. at 17, 23 (emphasis added); *see also* fn. 20 (citing A13, A14). Site Update fails to point to any discussion from the opinion demonstrating that the district court considered all of Site Update's errors in the aggregate. The associated footnote, which cites two other usages of "totality of the circumstances", is no better as neither address Site Update's defects in the ***aggregate***. *Id.* The citation at A13 is another conclusory statement that under the "totality of the circumstances", the court's "findings establish that this case is not exceptional." And the cite at A14 is solely related to whether Site Update's "highly problematic" and "likely [to be found] frivolous" East Texas positions ***alone*** make this case stand out. Newegg respectfully submits that under a reasonable reading of the opinion, the district

court did not consider the errors in the aggregate, which on its own, was an abuse of discretion requiring appellate intervention.

The district court's failure to consider the **aggregate** of defects (and ultimately conclude that this case stands out) highlights the importance for this Court to provide guidance on how the new "considerably lower" standard under *Octane* should be applied. As an example, the District Court of Minnesota recently issued its opinion in *Icon Health & Fitness, Inc. v. Octane Fitness LLC*, which followed the Supreme Court's decision and remand from the Federal Circuit, and addresses the specific issue that that the district court here did not. "Viewed individually, each of these circumstances might not suffice to make the case exceptional. However, when viewed **cumulatively**, these circumstances demonstrate that the case was litigated in a manner that stands out from more routine patent cases." 2015 WL 4041684, *9 (D. Minn. July 1, 2015) (emphasis added). In finding the case exceptional based on the **cumulative or aggregate** of circumstances or errors, the Minnesota court undertook the proper analysis intended by the Supreme Court in *Octane* that, respectfully, the district court in this case did not.

Assuming arguendo that the district court did consider the errors in the aggregate, but simply did not provide any discussion or analysis as to why in the aggregate this case did not stand out, Newegg submits that the district court

necessarily abused its discretion by not properly following the considerably lower standard set forth in *Octane.*

## IV. SITE UPDATE'S BELATED ATTEMPTS TO JUSTIFY ITS FAILURE TO UNDERSTAND AND PROPERLY APPLY MEANS-PLUS-FUNCTION LAW DO NOT IMPACT THE ULTIMATE CONCLUSION THAT THE DISTRICT COURT ABUSED ITS DISCRETION IN NOT FINDING THIS CASE EXCEPTIONAL

### A. Site Update's Positions Were Not "Consistent with Federal Circuit Precedent"

The district court ***twice*** found that Site Update failed to understand and properly apply clear Federal Circuit means-plus-function law. Yet Site Update remarkably claims that its "factual positions and arguments made during claim construction were ***consistent with Federal Circuit precedent*****.**" SUS Br. at 27 (emphasis in the original). Site Update's assertion—which is unsupported by any citation to the record—could not be further from the truth. Indeed, the district court repeatedly found that Site Update did not follow means-plus-function law. A17; A3388; Newegg App. Br. at 26-33.

The district court rejected each of Site Update's arguments, and specifically stated that each of the cases Site Update purports to rely on do not support its positions. A18-20 (rejecting Site Update's reliance on *TecSec, Katz, Elekta* and *Pavilion*).[1] Site Update's tortured claim that its positions were "***consistent with***

---

[1] Notably, Site Update ignores the score of other Federal Circuit means-plus-function cases (*e.g., Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d

*Federal Circuit precedent*" can lead to only one conclusion: that Site Update has

no credible basis to suggest that the district court did not abuse its discretion.

### B. Site Update's Failure to Understand and Apply Means-Plus-Function Law Was Not a "Factual Dispute"

Having no explanation for the district court's findings that Site Update

"misunderstood" means-plus-function law, Site Update seeks cover by framing its

failures as a "factual dispute."  Site Update argues:

> "To the contrary, *the claim construction dispute was fundamentally, and at least primarily, a factual dispute* about whether the patent disclosed, including to one of ordinary skill in the art, that the structures identified by SUS performed, and whether they were clearly linked, to the claimed functions."

> SUS Br. at 16 (emphasis added).

It is clear why Site Update creates this fiction: Site Update seeks to hide

behind purported evidence from the specification and expert declaration in an

attempt to make its incredible positions appear reasonable.

For each means-plus-function term, Site Update repeats the same conclusory

statement that its construction "was reasonable made in good faith, based upon

linked structures in the specification, and supported by a well-reasoned declaration

by a qualified expert."  *See generally,* SUS Br. 25-44; Headings VI.D.1, 3-8.  But

---

1328 (Fed. Cir. 2008); *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323 (Fed. Cir. 2008*)*; *Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371(Fed. Cir. 2009); *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376 (Fed. Cir. 2011); *Ergo Licensing v. Carefusion 303*, Inc., 673 F.3d 1361 (Fed. Cir. 2012)) that refute Site Update's unsupportable means-plus-function positions.  Newegg Br. at 27-30.

Site Update ignores that the district court rejected all of this purported evidence during the claim construction proceedings already and still found that Site Update failed to follow means-plus-function law.   And as explained below, neither the specification nor expert can now save Site Update.

### 1.     Site Update's Uninformative and Conclusory Expert Declaration Carries No Weight

Site Update heavily relies on its expert Dr. Lavian to disguise its inexplicable positions as reasonable ones by claiming that each was "supported by a well-reasoned declaration by a qualified expert."  But in several instances Site Update fails to cite to the uninformative Lavian declaration or even mention him whatsoever.

For example, Section VI.D.3 of Site Update's brief is titled " SUS's proposed construction of 'means for identifying…' was reasonable, made in good faith, based upon linked structures in the specification, and ***supported by a well-reasoned declaration by a qualified expert***" (emphasis added).  But the section **fails to even mention** Lavian, his opinions, or his declaration.  The same is true in Section VI.D.5 ("means for opening…") and Section VI.D.6 ("means for submitting…").

In Section VI.D.2 ("means for creating…"), Site Update makes the conclusory statement that "based upon the intrinsic evidence as understood by one of ordinary skill in the art (*i.e.,* SUS's technical expert, Dr. Lavian), SUS had a

reasonable and good faith position" that its proposed structures "operate to implement the claimed functions." SUS Br. at 31-32. Again, there is no support from the declaration that explains how these proposed structures "operate to implement the claimed functions" or even any citations to his declaration, whatsoever. The reason is clear: nothing in the conclusory Lavian declaration actually supports Site Update's meritless constructions.

In the rare instances that Site Update actually cites to the Lavian declaration, it is nothing more than an uninformative statement. For example, Section VI.D.4 ("means for transmitting") concludes:

> "SUS also reasonably relied upon its technical expert, Dr. Lavian, who reviewed and discussed the intrinsic evidence, and opined from the perspective of one of ordinary skill in the art that '[t]hese portions of the specification clearly identif[y] structure linked to the function of transmitting to an internet search engine a set of indices.' A1611."

But this self-serving, conclusory statement provides no opinion or explanation whatsoever of how Site Update's proposed structures are linked to performing the claimed function. That is because Lavian never attempted to link the computer structures proposed by Site Update to performing the claimed functions. Not surprisingly, nowhere in either order denying fees does the district court even mention, let alone give credence to, the Lavian declaration.

Lavian is further undermined by his reliance on the legal standards provided by counsel whom the district court found to "misunderstand the law." The

declaration states that counsel "explained to [him] the law" (A1593 at ¶12), but there can be no dispute that counsel failed to follow and understand means-plus-function law. Lavian's opinions were tainted and should carry no weight because he too necessarily "misunderstood" the law.

Site Update's heavy and continued reliance on the uninformative Lavian declaration should be rejected and further evidences how this case stands out. *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1377 (Fed. Cir. 2012) (Reyna, J. concurring) ("heavy and continued reliance on an uninformative declaration calls into question whether the statements were predicated in good faith"). In particular, Site Update's claim of support, but subsequent failure to even mention the declaration, cannot simply be attributed to "sloppiness" or "bad lawyering". Rather, it evidences Site Update's recognition that its positions had no merit to begin with, and its subsequent attempts to conceal this reality.

### 2. Site Update's Unexplained Patent Citations Further Evidence its Meritless Positions

Site Update's purported reliance on the specification is no better than its tortured attempt to rely on its expert. As discussed above, Site Update starts with the same conclusory heading for each term:

> "SUS's proposed construction of [insert MPF term] was reasonable, made in good faith, ***based upon linked structures in the specification***, and supported by a well-reasoned declaration by a qualified expert"

-17-

*e.g.,* SUS Br. at 37 (emphasis added)

Site Update then states its proposed construction, and makes the conclusory statement that linkage can be found in the specification:

> "As SUS pointed out during claim construction proceedings in the District Court, linkage between the [insert MPF term] function and structures in the specification is found in the following:"
>
> - [Insert any citation to specification that Site Update lodged in prior claim construction briefing]

*Id.*

Site Update repeats this for each means-plus-function terms discussed in its brief.  But just as Site Update failed to do so in prior briefing and oral argument, nowhere does Site Update explain how its proposed structures are linked to performing the claimed functions.  Accordingly, the district court found that Site Update "misunderstood" and, as a result, failed to follow the law.

Site Update's discussion of the "means for identifying" at Section VI.D.3. is illustrative.  SUS Br. at 37-38.  Site Update includes seven bullets of specification citations with absolutely no discussion as to how they show that Site Update's proposed structures are linked to performing the "identifying…" function.  Indeed, the section simply ends after the last bullet.  Site Update's failure to provide any explanation for how any of these citations support its proposed construction necessarily demonstrates that none actually do.

To the extent Site Update seeks to re-litigate whether its proposed constructions had any "substantive strength, considering the governing law and facts of the case", that ship has sailed and Site Update's positions have been rejected at least twice by the district court. That Site Update filled its opposition with conclusory self-serving statements and unexplained cites to the specification and an uninformative declaration do not change Site Update's failure to follow the law or Site Update's bad faith attempts to mask its failure to do so.

## C.    Site Update's Ever-Changing Arguments Evidence its Recognition of the Lack of Substantive Strength in its *Markman* Positions

The district court twice concluded that Site Update "misunderstood" or "misinterpreted Federal Circuit guidance" by advancing its "special purpose computer – no algorithm requirement" argument. A17-18; A3388-9. Unwilling to accept the district court's conclusion, Site Update now appears to suggest that the district court did not understand Site Update's arguments. SUS Br. at 10 ("However a fair reading of the totality of SUS's claim construction positions, *see* discussion *infra,* shows that SUS had not advanced such an assertion."). This Court should not be distracted by Site Update's new arguments. What is important is what Site Update argued in the claim construction proceedings (and not what appellate counsel argues now): that *Goss Intern. Am., Inc. v. Graphic Mgmt. Assoc., Inc.,* 739 F. Supp. 2d 1089 (N.D. Ill. 2010)*,* a single Northern District of Illinois case, justifies its assertion that computer structures such as a CGI script,

form, database and web server are "special purpose computers" such that the disclosure of an algorithm for performing the claimed function is not required. A1567-9.  Site Update argued based on *Goss* that "a special purpose computer can be as simple as a controller", seeking analogous treatment for its proposed structurues (*e.g.,* a CGI script).  A1568-9.

The district court rejected that argument by finding that Site Update's reliance on *Goss* was unpersuasive and that Site Update "misunderstood" Federal Circuit means-plus-function law.  A17-8; A3388-9.  Appellate counsel cannot rewrite the positions taken by Site Update or change the district court's rejection or characterization of them.  Indeed, on remand and after this Court questioned Site Update's reliance on *Goss* during oral argument in the First Appeal, Site Update abandoned *Goss* and sought to rely on the Federal Circuit's decision in *Tec-Sec.* A3455-6.  To do so, Site Update was forced to re-cast its prior positions in an attempt to fit within *Tec-Sec.*  As Newegg pointed out on remand, Site Update's new argument that its proposed structures "provide sufficient disclosure to convert a web server into a special purpose computer" was waived, but nevertheless, still failed to follow means-plus-function law, as nowhere did Site Update explain how those structures purportedly performed the claimed functions.  A3900-1.  The district court rejected Site Update's belated reliance on *Tec-Sec,* finding that

neither it nor any other Federal Circuit case supported Site Update's position.

A18-20.

Now on appeal for the second time, the fact that Site Update challenges the district court's interpretation of its positions, despite the district court having heard Site Update's arguments over a half-dozen times[2], evidences Site Update's ever-changing, but still meritless, positions.   Site Update will say anything to make its original positions seem remotely reasonable.

### D.    Site Update's Continued Misrepresentations and Manufactured Attacks on Newegg's Positions Demonstrate Bad Faith

Site Update also seeks to mitigate the frivolity of its positions by making unfounded attacks on Newegg's positions.  Site Update has made these arguments before, and despite Newegg providing direct evidence refuting them, Site Update remarkably *continues* to make these assertions.

For example, in defense of its unsupported, and thus rejected, construction on the "means for creating" term, Site Update twice asserts that "it should be noted that while the District Court did not agree with SUS's construction, it did not fully agree with Newegg's construction of this term either."  SUS Br. at 32, 35.  Not true.  In fact, the district court's order specifically states that "[t]he ***court adopted***

---

[2] The district court has had the benefit of Site Update's explanation for its claim construction positions no less than nine times: three claim construction briefs, a *Markman* hearing, two fee motion opposition briefs, two fee motion hearings, and the record of Site Update's arguments from the First Appeal.

***Newegg's construction*** of the structure for 'means for creating' claim". A22 (emphasis added). More troubling, Site Update made this same argument in the First Appeal, and Newegg refuted it by citing to the district court's First Order. Newegg First Appeal Reply Br. at 16 citing A3384 ("The ***court adopted Newegg's construction*** of the structure for both 'means for identifying' and 'means for creating.'") (emphasis added). Site Update's assertion contradicts ***two*** district court opinions and ignores Newegg's prior briefing refuting Site Update's baseless charge.

Site Update's misrepresentation is not an isolated incident. Site Update further asserts that "Newegg did not even allege [indefiniteness of claims on MPF grounds] in the first round of claim construction briefing." SUS Br. at 6. Again, not true. Newegg's opening claim construction brief in the Eastern District of Texas explicitly states that for the "means for transmitting term", the patent's "***vague disclosure is insufficient to satisfy the Section 112 structure requirement***..." *Id.* A994 (emphasis added). Moreover, Newegg filed a motion for summary judgment on indefiniteness of this element on the same day. A1185-8. ("The ***specification does not identify any particular structure or algorithm*** for performing the claimed-transmitting function. As a result, 'this means-plus-function claim ***lacks structure and is thus indefinite*** under 35 U.S.C. § 112.'") (emphasis added). Again, Newegg refuted this argument by Site Update in prior

briefing.  A3903-4.  Nevertheless, Site Update continues to make unfounded accusations in an effort to make its positions appear more reasonable.  Site Update's tactic fails.

Site Update may seek to excuse these misrepresentations as "sloppiness" or "less than stellar lawyering" as it has done with other baseless arguments in its brief.  SUS Br. at 50; *see infra* Section V.  Site Update's pattern of repeating misrepresentations and rejected arguments, while alone may not independently prove bad faith litigation, at a minimum demonstrates the lack of merit in Site Update's litigation positions and is additional evidence that the district court did not consider in the ***aggregate*** in determining whether this case stands out from others.  This further evidences that the district court abused its discretion.

## V.  "SLOPPINESS" AND "LESS THAN STELLAR LAWYERING" ARE NOT EXCUSES TO SITE UPDATE'S PERVASIVE MISUNDERSTANDING OF THE LAW

As discussed in Section IV.C., Site Update's "explanation" for its positions continues to be a moving target.  Site Update's remarkable explanation for its citations to *Katz* is the latest example.  Newegg's brief explained that in addition to Site Update's failure to follow the law, including advocating that cases it cited supported its position when they in-fact did not (*e.g., Tec-Sec*), Site Update also curiously set forth an argument based on a Central District of California opinion in *Katz*—a case having nothing to with the disputes here.  Newegg App. Br. at 38-42.

Site Update's excuse—that it cited *Katz* "for general principles of MPF law"—is not credible.  To be clear, Site Update does not cite to the Federal Circuit's opinion in *Katz,* which explains that there is only one narrow exception to the algorithm requirement: when the function "can be achieved by any general purpose computer without special programming."  *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011).  Rather, Site Update cites the ***district court*** opinion following remand for a burden-shifting argument (*i.e.,* that "for the algorithm requirement to apply, Defendants must present at least substantial evidence that a general purpose computer cannot perform the relevant means-plus-function functions").  *See, e.g.,* A1569.  Site Update is now forced to create a novel argument that the district court *Katz* case was cited "to focus upon the fact that Newegg bears the burden of proof on invalidity".  SUS Br. at 49.  But a plain reading of Site Update's argument is that Newegg has the burden of proving that a general purpose computer cannot perform the means-plus-function functions such that an algorithm is required—an argument wholly inconsistent with, and a flawed application of, this Court's opinion in *Katz.*

Site Update then states that, at worst, its citations to *Katz* and other irrelevant authority "would amount to sloppiness or less than stellar lawyering on SUS's part" and relies on this Court's recent opinion in *Gaymar Industries, Inc. v. Cincinnati Sub-Zero Products, Inc.*, 790 F.3d 1369 (Fed. Cir. 2015) to argue that

its "sloppiness" is irrelevant to an exceptional case finding.  SUS Br. at 50.

Respectfully, Site Update's position is an overreach of *Gaymar*.  In *Gaymar*, the

district court declined to find the case exceptional on the basis that the party

seeking fees had engaged in litigation misconduct because of "bad lawyering."

The Federal Circuit reversed the district court's denial of attorneys' fees, finding

that the district court clearly erred in finding four statements (two of which the

Federal Circuit said could be "properly characterized as overstatements") to

constitute litigation misconduct.  *Gaymar*, 790 F. 3d at 1376.

To be clear, *Gaymar* does not stand for the proposition that

misunderstanding and misrepresenting the law (as Site Update has done from the

outset and through this appeal) is irrelevant to the §285 analysis under *Octane*.  To

the contrary, it certainly needs to be considered under the totality of the

circumstances.  *Id.* at 1373.  Site Update cannot credibly assert that the isolated

instances of "less than stellar lawyering" in *Gaymar* are comparable to its

pervasive failure to understand and follow means-plus-function law here.  Site

Update's repeated citations to the district court *Katz* opinion (and all of the other

misrepresentations discussed herein) alone may not create an independent basis for

finding the case exceptional.  However, Site Update's 'erroneous' case cites[3]—

---

[3] This concession of "sloppiness" is not an isolated occurrence.  *See, e.g.,* SUS Br.
at 5 ("...SUS's opening claim construction brief could have been better and more
clearly written…"); A4036, A4046, A4117-8 (demonstrating inconsistent

combined with its ever-changing explanations for its unsupportable claim construction positions—further evidence Site Update's clear failure to understand and follow means-plus-function law and the ultimate lack of substantive strength in its litigation position which found **no** legal support in the governing law.  The district court did not consider this evidence under the totality of the circumstances, further supporting a finding of an abuse of discretion.

## VI.    SITE UPDATE CANNOT HIDE BEHIND THE PRESUMPTION OF VALIDITY BY CLAIMING THAT THIS CASE IS ONLY ABOUT INDEFINITENESS

Finally, Site Update's disingenuous argument that the dispute is solely about indefiniteness—in order to hide behind the presumption of validity—is another transparent attempt by Site Update to excuse the exceptional nature of this case:

> "Fundamentally, Newegg seeks to have this Court hold that the District Court abused its discretion in holding that this case does not stand out from others sufficient for fee shifting *in view of SUS's defending the validity of its presumptively valid (and thus presumptively definite) patent claim, which was twice determined valid by the Patent Office – once at issuance and again on reissuance*,…"

> SUS Br. at 15 (emphasis added).

> "SUS was reasonable in *relying in part on the presumption of validity, and the heavy burden of clear and convincing evidence for overcoming validity*, in support of its view that the means plus function elements at issue involved special purpose computer with clearly linked structures."

arguments by Site Update in different briefs, but claimed by counsel at oral argument to simply be a typo).

*Id.* at 22-23 (emphasis added).

Site Update has it backwards.  This is **not** a case about Site Update defending the validity of its patent as Site Update sued Newegg, not *vice versa*.  Moreover, the presumption of validity and clear and convincing evidence standard of invalidity have **nothing** to do with Site Update's requirement to propose reasonable claim constructions as part of the litigation that Site Update chose to initiate.  Indeed, Site Update selected a single means-plus-function claim to assert against Newegg and in doing so, had a duty to understand and properly apply the law that formed the basis of its complaint.  Site Update's failure to do so led to numerous bases demonstrating that Site Update's entire case had no merit, and made this case "stand out" from the "more routine patent case".  Indefiniteness (on four separate grounds) is only one of many other bases that make this case "exceptional" alone or in the aggregate.

The district court's confirmation that Site Update failed to understand and properly apply clear Federal Circuit means-plus-function law is a much broader problem than the claim's indefiniteness.  This Court's algorithm requirement in computer-implemented means-plus-function claims is clear and has continuously been reaffirmed.  Newegg Br. at 27-30.  Site Update failed to understand and follow this requirement for **all** of the means-plus-function terms, not just the ones

the Court found likely indefinite. Site Update's failure or refusal to understand the governing law, at best, made indefiniteness based on specific terms more apparent.

Similarly, the district court's conclusion that Site Update's East Texas claim constructions were "highly problematic" and "likely would [have been found] frivolous" was not based on of the claim's indefiniteness of claim 8—that conclusion was based on the exceptionality of Site Update's proposed constructions (*e.g.,* that the structures for six of eight means-plus-function terms could simply be a CGI program or script) and their absence of both factual and legal support. *See, e.g.,* A3391; Newegg Br. at 46-47. Nor is the district court's conclusion that Site Update continued to 'misunderstand' the law with its amended positions in California, where Site Update continued to fail to provide any supporting legal authority for them. *Id.* at 47.

The indefiniteness of claim 8 is also irrelevant to Site Update's unreasonable positions on "website database" and the "Table of Files within the Table of Search Engines", which have nothing to do with the single asserted claim's indefiniteness. Site Update's position on "website database" was found to be contrary to the intrinsic record. *Id.* at 53-57. Worse, Site Update's explanation for its failure to include the table of files within the table of search engines—a critical structure to the alleged invention—as linked structure "strain[ed] credibility" and was "difficult to make logical sense of" because Site Update proposed the generic

database as structure for performing the claimed function. *Id.* at 47-53; A26. How Site Update argued that a generic database is linked structure, but that the specific database disclosed in the patent was somehow not, is perplexing.

In sum, contrary to Site Update's assertions, this case is not about Site Update "defending the validity of its patent"—that is simply another one of Site Update's excuses. Rather, this case is about how the ***aggregate*** of defects necessarily make this case stand out from the "typical patent case" and exceptional under the Supreme Court's considerably lower §285 standard. Site Update made the conscious decision to assert a single means-plus-function claim and in doing so, necessarily needed to understand and properly apply means-plus-function law to form the basis for its complaint. Site Update failed to do so despite being a subsidiary of the largest patent assertion entity and represented by experienced patent counsel. In considering the number of defects and errors in Site Update's positions, and the district court's acknowledgement of the same, there can only be one explanation: Site Update never intended to litigate the case on the merits, and its sole mission was to extract nuisance value settlements and abandon its case when it could no longer do so.

Following *Octane,* the Supreme Court has warned of cases that "may be designed to obtain payments that are based more on the cost of defending litigation than on the merits of the patent claims" and reminded that "district courts have the

authority and responsibility to ensure frivolous cases are dissuaded". *Commil USA, LLC v. Cisco Systems, Inc.*, 135 S. Ct. 1920, 1930 (2015). All of the problems with Site Update's case in the ***aggregate***, and under the totality of circumstances, should have resulted in an exceptional case finding. Given the clear record presented on appeal, and the importance for this Court to provide guidance on (1) how *Octane* should be properly applied to accomplish the Supreme Court's intent and (2) when a district court has abused its discretion in not doing so, the district court's order should be reversed.

## VII.    CONCLUSION

For the reasons set forth in Newegg's Appellate Brief and herein, the district court's order should be reversed.

Respectfully submitted,

PAUL HASTINGS LLP

By: */s/ Yar R. Chaikovsky*
Yar R. Chaikovsky
Philip Ou
PAUL HASTINGS LLP
1117 California Avenue
Palo Alto, California 94034
+1 650 328 1800

Counsel for: Defendant-Appellant

# United States Court of Appeals
# for the Federal Circuit

*Site Update Solutions, LLC v. CBS Corp., 2015-1448*

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by PAUL HASTINGS LLP, attorneys for Appellant to print this document.  I am an employee of Counsel Press.

On **August 21, 2015,** counsel has authorized me to electronically file the foregoing **Defendant-Appellant's Newegg Inc.'s Reply Brief** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

> John J. Edmonds
> (principal counsel)
> Shea N. Palavan
> Collins, Edmonds, Pogorzelski,
> Schlather & Tower PLLC
> 1616 South Voss Road
> Houston, TX 77057
> 281-501-3425
> jedmonds@cepiplaw.com
> spalavan@cepiplaw.com
> *Counsel for Site Updated Solutions*

Paper copies will also be mailed to the above counsel at the time paper copies are sent to the Court.  Any counsel for Amici Curiae appearing at the time of this filing will be served only via the Court's CM/ECF email notice.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules

August 21, 2015                                    /s/ Robyn Cocho

                                                    Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.  This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  It contains 6,897 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface using Word 2010 Times New Roman 14 point font.

By: */s/ Yar R. Chaikovsky*
Yar R. Chaikovsky
PAUL HASTINGS LLP
1117 California Avenue
Palo Alto, California 94034
+1 650 328 1800

Counsel for: Defendant-Appellant

Dated:  August 21, 2015